IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL D. R., <br><br> Petitioner, <br><br> v. <br><br> CHARLES GREEN, <br><br> Respondent. | HON. JOHN MICHAEL VAZQUEZ <br><br> Civil Action <br> No. 18-15063 (JMV) <br><br> **OPINION** |

**VAZQUEZ, District Judge:**

# I. INTRODUCTION

Presently pending before the Court is Petitioner's amended habeas corpus petition challenging his prolonged immigration detention pursuant to 28 U.S.C. § 2241 (at ECF No. 10; hereinafter, the "Petition"). Additionally pending are a number of motions and other applications filed by Petitioner that also seek to have this Court order his immediate release from immigration custody. (*See*, *e.g.*, ECF Nos. 37 and 40.) For the reasons stated herein, the Petition is denied. Petitioner's myriad other applications for immediate release are likewise denied. This matter is now closed and Petitioner's renewed application for the appointment of counsel (at ECF No. 36) is therefore also denied.

# II. BACKGROUND

*a. Factual Background*

Petitioner is an immigration detainee who has been held in the Essex County Correctional Facility ("ECCF"), located in Newark, New Jersey, by United States Immigration and Customs Enforcement ("ICE") since June 25, 2018. (*See*, *e.g.*, ECF No. 19.) The record conclusively established the following facts underlying his present detention.

Petitioner is a citizen of Liberia who lawfully entered the United States in 1986. (*See*, ECF No. 10 at PageID: 164; ECF No. 41-2.) On July 5, 1990, Petitioner was convicted of possession of crack cocaine with intent to distribute. (*See* ECF No. 42-1.) On May 1, 1991, Petitioner was convicted of second-degree rape. (*Id.*) On November 25, 1997, an immigration judge ("IJ") ordered Petitioner's removal from the United States. (ECF No. 41-2.) Petitioner was subsequently deported to Liberia on January 30, 1998. (ECF No. 23-1 at PageID: 271.) Petitioner thereafter "illegally re-entered the United States without being admitted, inspected or paroled by an Immigration Official" on or about June 17, 1998, and has remained in this country without legal authorization since that time. (*Id.*; *see also* ECF No. 41-9.)

On April 15, 2014, the United States Department of Homeland Security ("DHS") reinstated Petitioner's 1997 removal order. (ECF 41-4.) On July 23, 2014, Petitioner – who was then being detained by immigration officials – was served with notice of that reinstatement. (*Id.*) At that time, Petitioner claimed fear of persecution and torture if he were returned to Liberia, *i.e.*, he requested "withholding only" protection. (ECF No. 23-1 at PageID: 271.) In other words, Petitioner applied for protection against being deported to Liberia specifically; the validity of Petitioner's underlying 1997 removal order was not – and is not – in dispute. Petitioner's withholding only claims were referred to an IJ for adjudication on October 28, 2014. (*Id.*) On July 13, 2015, Petitioner was released on bond from his prior stint in immigration custody. (ECF No. 41-9.) On July 21, 2016, the IJ deemed Petitioner's withholding application abandoned in light of his failure to appear at a hearing on that date; Petitioner was not in immigration custody at that time. (ECF No. 41-11; *accord* ECF No. 10 at PageID: 184.) The IJ accordingly closed Petitioner's withholding only matter and referred Petitioner's case back to the DHS for purposes of removing Petitioner. (*Id.*)

Thereafter, on June 25, 2018, Immigration and Customs Enforcement ("ICE") officials arrested Petitioner; he has been continuously detained by immigration officials at ECCF since that time. (ECF No. 41-1.) On September 12, 2018, Petitioner moved to reopen his withholding only proceedings. (ECF No. 41-13.) On October 16, 2018, an IJ reopened that matter; Petitioner's withholding only action is now pending in immigration court in New York City. (ECF No. 41-14.) A merits hearing on Petitioner's withholding only application is presently scheduled for May 3, 2019. (ECF No. 41-16.)

On October 5, 2018 – approximately 102 days after Petitioner's present detention at ECCF began – ICE informed Petitioner that his "custody status [had] been reviewed and . . . that [he would] not be released from the custody of [ICE] at [that] time." (ECF No. 10 at PageID: 187.) On December 27, 2018 – after Petitioner had been detained for approximately 185 days – an IJ held a bond hearing and formally denied Petitioner's request for release. (ECF No. 41-15.) Petitioner notes that his bond application was denied because "the IJ found him to be a danger to the community and a flight risk." (ECF No. 21.) The IJ's December 27th order denying Petitioner's request to be released on bond expressly states that any appeal of that Order was due on or before January 28, 2019. (ECF No. 41-15.) Respondent (hereinafter, the "Government") avers – and Petitioner does not dispute – that Petitioner never appealed the IJ's January 28th order denying bond. (ECF No. 41 at 5.)

b. *The Parties' Habeas Filings*

Petitioner initiated this § 2241 habeas action, *pro se*, in the United States District Court for the Southern District of New York (the "Southern District") on August 7, 2018, approximately 46 days after Petitioner's present detention at ECCF began. (*See* ECF No. 2.) The Southern District transferred the matter to the District of New Jersey on October 11, 2018. (ECF No. 7.)

Since that time, Petitioner has submitted a multitude of emergent motions, filings, and other applications, many of which have already been resolved by the Court. Those already-resolved filings include, *inter alia*, Petitioner's January 9, 2019 *ex parte* emergency motion seeking immediate release. (ECF No. 23.) The Court denied Petitioner's first emergency motion on January 15, 2019. (ECF No. 25.) At that time, the Court specifically found that Petitioner "failed to make 'a clear and specific showing' [under the Local Rule governing applications for emergency relief in this District, Rule 65.1,] of 'good and sufficient reasons' why he [was] entitled to . . . immediate release from immigration custody." (*Id.* at 6.) The Court also indicated that "[t]he merits of Petitioner's habeas claims [would] instead be resolved after the Government files its answer to the Petition." (*Id.*)

On January 28, 2019 – before the Government filed its answer – Petitioner filed his second emergency motion for immediate release (at ECF No. 30), as well as a separate motion seeking reconsideration of the Court's January 15th denial of his first emergency motion (at ECF No. 29). On January 30, 2019, the Court denied both motions. (ECF No. 31.) In so doing, the Court noted that Petitioner's claim that he is not subject to a final order of removal was – and continues to remain – controverted by "abundant record evidence[.]" (*Id.* at 3.)

Since January 30, 2019, Petitioner has submitted ten (10) separate filings to the Court, including, *inter alia*, his February 5, 2010 emergency motion for reconsideration (at ECF No. 37), and his February 14, 2019 motion for the Court to order withholding of his removal from the United States (at ECF No. 40). With the exception of Petitioner's renewed motion for appointment of counsel (at ECF No. 36), all of these filings request the same relief, *i.e.*, that the Court order Petitioner's immediate release. Indeed, even in Petitioner's February 4, 2019 opposition to the Government's request for a filing extension, Petitioner claims that "[f]or obvious reasons, by

evidence in possession of this court, it is clear that [Petitioner] was not ordered removed on July 21, 2016[,]" and thus, "that this Court [should therefore] order his release from his unlawful detention." (ECF No. 35.)

All of Petitioner's recent submissions rely on the same record evidence that he previously submitted to the Court in support of his already-resolved emergent *ex parte* applications for immediate release. Petitioner has, nonetheless opted to again attached copies of the same documents to several of his ten most recent filings (*see*, *e.g.*, ECF Nos. 34, 37, 38, and 40), and, even more incredibly, has characterized these same, repetitive, redundant, and previously-submitted documents as "new evidence." (*See*, *e.g.*, ECF Nos. 34 and 37.) However, nothing in these submissions undermines the timeline and factual findings summarized above. Moreover, all of these filings rely on the same principal argument that the Court previously rejected, *i.e.*, that because the immigration court's July 21, 2016 order terminating his withholding only proceedings was administrative in nature – and thus not a substantive decision on the merits of that application – there is no valid final order of removal upon which to detain and deport him. (*See*, *e.g.*, ECF No. 35.)

The Government filed its response to the Petition and Petitioner's multiple other submissions on February 15, 2019. (ECF No. 41.) The Government argues that Petitioner's § 2241 Petition and his other related filings requesting his immediate release should be denied because Petitioner – as an individual detained under § 1231(a)(6) – received a bond hearing on December 27, 2018, and has failed to exhaust available administrative remedies via the filing of an appeal to the Board of Immigration Appeals ("BIA") challenging the IJ's December 27th custody determination. (*Id.* at 5.)

### III. STANDARD OF REVIEW

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

### IV. ANALYSIS

*a. Petitioner is Subject to a "Final" Order of Removal; He is Accordingly Detained Pursuant to 8 U.S.C. § 1231(a)*

As noted above, Petitioner is subject to a 1997 order of removal (at ECF No. 41-2) which was reinstated in 2014 after his illegal reentry into the United States. (ECF 41-4.) After being served with notice of that reinstatement (*see id.*), Petitioner applied for withholding only relief based on his claim that he faces a threat if returned to his native Liberia. (ECF No. 41-5.) A hearing in the immigration court on the merits of that application is now scheduled for May 3, 2019. (ECF No. 41-16.) To be clear, even if Petitioner prevails on his withholding only application, he will remain subject to removal from the United States; he will be exempt only from deportation to Liberia. *See Reyes v. Lynch*, No. 15-0442 2015 WL 5081597, at *3 (D. Colo. Aug. 28, 2015) ("Even if Petitioner prevails on his withholding claim, the United States may remove Petitioner to a country other than Mexico if such country will accept him, and there is no administrative or judicial relief to which Petitioner would be entitled against such a removal.")

(citing 8 C.F.R. § 1208.2(c)(3)(i)); *Pina v. Castille*, No. 16-4280, 2017 WL 935163, at *2 (D.N.J. Mar. 9, 2017) (same); *see also* 8 U.S.C. § 1231(a)(5) (where "an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, . . . and the alien shall be removed under the prior order at any time after the reentry."). Based on these facts, Petitioner – who is subject to "a reinstated order of removal but is also pursuing withholding only relief" – is presently being held as a post-removal order immigration detainee under 8 U.S.C. § 1231(a).[1] *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208, 211 (3d Cir. 2018).

    b. *The Standards Governing Detention Under § 1231(a)*

8 U.S.C. § 1231(a) provides that, "except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." *Id.* at §

---

[1] The Court expressly rejects Petitioner's claim that his detention is instead presently governed by 8 U.S.C. § 1226(a)'s pre-final removal order provisions. Petitioner avers that because his withholding only claims are presently pending in immigration court in New York City, the Second Circuit's decision in *Guerra v. Shanahan*, 831 F.3d 59, 63 (2d Cir. 2016) – which holds that an alien's "detention during the pendency of his withholding-only proceedings is detention pursuant to 8 U.S.C. § 1226(a)" – and not the Third Circuit's *Guerrero-Sanchez* decision – which expressly rejected *Guerra* to hold that § 1231(a) governs the detention of an alien who is subject to a reinstated order of removal but is also pursuing withholding only relief – is controlling on this point. (*See* ECF No. 22 at PageID: 257.) Petitioner is incorrect. This Court "is bound by controlling decisions of the Third Circuit," not by decisions of other circuits. *Pittston Co. v. Sedgwick James, Inc.*, 971 F.Supp. 915, 919 (D.N.J. 1997); *accord Vujosevic v. Rafferty*, 844 F.2d 1023, 1030 n.4 (3d Cir. 1988) ("It is, of course, patent that a district court does not have the discretion to disregard controlling precedent simply because it disagrees with the reasoning behind such precedent."). The Court likewise rejects Petitioner's oft-repeated argument that because the IJ's July 21, 2016 order terminating Petitioner's withholding only proceedings was administrative in nature – and thus not a substantive decision on the merits of that application – there is no valid final order of removal upon which to detain and deport him. (*See*, *e.g.*, ECF No. 22; ECF No. 35.) Indeed, *Guerrero-Sanchez* expressly "hold[s] that a reinstated order of removal against an alien who has initiated withholding-only proceedings is administratively final." *Id.* at 217.

1231(a)(1)(A). Aliens must be detained during the ninety-day post-removal order period. *See* 8 U.S.C. § 1231(a)(2). If the alien is not removed in this ninety-day period, then § 1231(a)(6) authorizes either continued detention or release on bond:

> An alien ordered removed [1] who is inadmissible . . . [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision[.].

*Guerrero-Sanchez*, 905 F.3d at 219-20 (citing § 1231(a)(6)).

In *Zadvydas v. Davis*, the United States Supreme Court held that § 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. In other words, "[o]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. To obtain habeas relief under *Zadvydas*, the petitioner must provide facts showing good reason to believe that there is no reasonable likelihood of his actual removal in the reasonably foreseeable future. *Id.* at 701. "*Zadvydas* does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief." *Alexander v. Attorney Gen. of United States*, 495 F. App'x 274, 276-77 (3d Cir. 2012) (citing *Zadvydas*, 533 U.S. at 701). As a rule of thumb, the Supreme Court has stated that six months is a presumptively reasonable period of post-removal detention under § 1231(a)(6). *See Zadvydas*, 533 U.S. at 701.

The Third Circuit has since noted – in its precedential *Guerrero-Sanchez* decision – that "*Zadvydas* [does not appropriately] address the due process concerns posed by prolonged detention of someone who[, like Petitioner,] is still seeking withholding-only relief [but whose detention is

8

nonetheless governed by § 1231(a)]. Rather, *Zadvydas* addressed only the detention of noncitizens who—unlike [Petitioner]—have exhausted all administrative and judicial challenges to removal, including applications for relief from removal, and are only waiting for their removal to be effectuated." *Guerrero-Sanchez*, 905 F.3d at 220. In light of that consideration, *Guerrero-Sanchez* holds that, in addition to the rights announced by the Supreme Court in *Zadvydas*, "§ 1231(a)(6) affords a bond hearing after prolonged detention to any alien who falls within the ambit of that provision." *Id.* at 211. This includes individuals with reinstated removal orders under § 1231(a)(5) who are pursuing withholding-only relief. *Id.* at 225.

In accordance with *Guerrero-Sanchez*, "alien[s, like Petitioner,] detained under § 1231(a)(6) [are] generally entitled to a bond hearing after six months (*i.e.*, 180 days) of custody." *Id.* at 226. In other words, "an alien facing prolonged detention under [that provision] is entitled to a bond hearing before an immigration judge and is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community." *Id.* at 224 (quoting *Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011). To be clear, "[§ 1231(a)(6) detainees] are not necessarily entitled to release after prolonged detention. Rather, they are owed only a bond hearing before an immigration judge to determine if they pose either a flight risk or a danger to the community. An alien will be released only if the immigration judge answers both inquiries in the negative." *See Guerrero-Sanchez*, 905 F.3d at 225 n.13. Importantly, a district court does not have jurisdiction to review an IJ's decision denying bond, *see*, *e.g.*, *Pena v. Davies*, No. 15-7291, 2016 WL 74410, at *2 (D.N.J. Jan. 5, 2016), unless that bond hearing was conducted unlawfully or without due process. *See*, *e.g.*, *Garcia v. Green*, No. 16-0565, 2016 WL 1718102, at *3-4 (D.N.J. Apr. 29, 2016).

*c. Application*

Petitioner has been continuously detained by immigration officials since June 25, 2018. (ECF No. 41-1.) Critically, on December 27, 2018 – in satisfaction of the mandate of *Guerrero-Sanchez* – an IJ held a bond hearing during which he "found [Petitioner] to be a danger to the community and a flight risk" and formally denied Petitioner's request for release. (ECF No. 21.) While Petitioner avers that the hearing was "fundamentally unfair" (*see id.*), he has not presented any evidence to the Court which suggests that the IJ's hearing was conducted unlawfully or without due process. Moreover, it is undisputed that Petitioner never appealed the IJ's decision denying bond to the BIA. (ECF No. 41 at 5.)

In light of these considerations, the Court is without the authority to review the IJ's December 27th bond decision. *See Colon-Pena v. Rodriguez*, No. 17-10460, 2018 WL 1327110, at *2 (D.N.J. Mar. 15, 2018); *Reeves v. Johnson*, No. 15-1962, 2015 WL 1383942, at *3 (D.N.J. Mar. 24, 2015) ("The present petition might be liberally construed as containing a claim that the IJ erred in finding Petitioner to be a flight risk because he has been a law-abiding citizen for many years after his criminal conviction. This Court, however, does not have jurisdiction over discretionary agency decisions."); *Harris v. Herrey*, No. 13-4365, 2013 WL 3884191, at *1 (D.N.J. July 26, 2013) ("If [the detainee] requests, but is wrongfully denied, a bond hearing, he may ask this Court to order that such a hearing be held. After a *bona fide* bond hearing, the immigration judge might grant, or deny, release on bond. [The district court] would not have the power to overrule such a denial of release after a *bona fide* hearing."). Accordingly, insomuch as Petitioner asks this Court to order his immediate release in light of his purportedly unfair December 27th bond hearing, that request is denied.

In addition, because Petitioner's entire period of ICE detention since June 25, 2018, has been governed by 8 U.S.C. § 1231, the Court will also consider whether his detention, now just under nine months, is unconstitutional under *Zadvydas*. As set forth above, § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Because Petitioner's detention has exceeded the six-month period that is deemed presumptively reasonable under *Zadvydas*, he may be entitled to habeas relief if he demonstrates that there is no reasonable likelihood of actual removal in the reasonably foreseeable future. *See Barenboy v. Attorney Gen. of United States*, 160 F. App'x 258, 261 n.2 (3d Cir. 2005) ("Once the six-month period has passed, the burden is on the alien to 'provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]' Only then does the burden shift to the Government, which 'must respond with evidence sufficient to rebut that showing.'") (quoting *Zadvydas*, 533 U.S. at 701).

Petitioner has not met his burden of proof under this standard. Petitioner has already been deported once before. The sole impediment to the present enforcement of Petitioner's final order of removal, his now-pending withholding only application, is scheduled for a merits hearing in less than one month, on May 3, 2019. To the extent Petitioner claims that he should presently be released from immigration custody because final resolution of his withholding only proceedings could still take months or even years, such an argument is premature pending the outcome of this

May 3rd hearing.[2] As such, Petitioner has not presently demonstrated entitlement to relief under *Zadvydas*. *See*, *e.g.*, *Joseph v. United States*, 127 F App'x 79, 81 (3d Cir. 2005) (affirming dismissal of § 2241 petition challenging detention pursuant to § 1231(a)(6) because petition did not provide "good reason" to believe there is no likelihood of removal); *Abdelrahman v. BICE's Interim Field Office Director*, Civ. No. 05-1916, 2005 WL 3320841, at *2 (M.D. Pa. Dec. 7, 2005) (noting that "the fundamental basis of [the petitioner's] argument appear[ed] to be that his removal [was] unlikely simply because it [had] not occurred to this point."); *see also Us v. Doll*, No. 1:17-CV-02403, 2018 WL 1400539, at *4 (M.D. Pa. Mar. 20, 2018) (denying habeas relief to § 1231(a) detainee who had been held in immigration custody for ten months);. *Bucio-Fernandez v. Sabol*, No. 1:17-CV-00195, 2017 WL 2619138, at *5 (M.D. Pa. June 16, 2017) (denying habeas relief to § 1231(a) detainee held in immigration custody for eleven months).

Ultimately, the Court concludes that Petitioner's current detention by immigration authorities, beginning June 25, 2018, for which he received a bond hearing before an IJ on December 27, 2018, does not violate his constitutional rights. As such, his Petition is dismissed without prejudice. Petitioner's additional motions and applications requesting his immediate release are likewise denied. This matter is now closed and Petitioner's renewed motion for appointment of counsel is denied as moot. Petitioner may file a new § 2241 petition in the event

---

[2] This argument also disregards Petitioner's role in preventing his withholding application from having already obtained final resolution. To be clear, Petitioner initiated his now-pending withholding application in 2014, *after* he was detained by immigration officials seeking to deport him pursuant to a final order of removal. On July 26, 2016, the immigration court terminated Petitioner's withholding proceedings as withdrawn after Petitioner failed to appear at a hearing on that date. (*See* ECF No. ECF No. 41-11.) This occurred *after* Petitioner had been released from his prior stint in immigration detention on July 13, 2015. Petitioner did not attempt to pursue his withholding claim further until September 12, 2018 (*see* ECF No. 41-13), *after* he was again detained by immigration officials.

he can provide evidence demonstrating that there is no significant likelihood of his removal in the reasonably foreseeable future.

## V.    CONCLUSION

For the reasons stated above, Petitioner's habeas petition is denied without prejudice. Petitioner's other motions and applications seeking his immediate release are also denied. This case is now closed. Petitioner's renewed motion for the appointment of counsel is denied as moot. An appropriate Order follows.

<table>
<tr><td>April 12, 2019<br>Date</td><td>s/ John Michael Vazquez<br>JOHN MICHAEL VAZQUEZ<br>United States District Judge</td></tr>
</table>